[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven at New Haven. The plaintiff, whose maiden name is Patricia J. Williams, and the defendant were married on August 15, 1978 in Cheshire, Connecticut. The plaintiff and the defendant have resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. There are two minor children issue of the marriage: Thomas John Yelmini, born March 10, 1983 and Christopher Michael Yelmini born November 24, 1986. The parties have one other child issue of the marriage David Charles Yelmini, born July 9, 1981. He is still in high school and expects to graduate in June 2000. No other children have been born to the plaintiff wife since the date of the marriage of the parties. The parties have not received state assistance.
The marriage between the parties has broken down irretrievably without any reasonable prospects for reconciliation.
The plaintiff is forty-nine years of age and appears to be in good health except for asthma and stress related to the divorce proceedings. Two years into the marriage the plaintiff stopped working full time. Over the years she worked part time at several locations. She earned her masters degree in 1995. The plaintiff reentered the job market full time two and a half years ago at the University of New Haven. She is currently employed as a teacher at the Manson Youth Institution. Her current annual salary is $39,000.00. As of January 1, 2000 her annual salary will be $41,000.00.
The defendant is forty-eight years of age and appears to be in good health except for arthritis in the shoulder and neck and alcohol dependency. The defendant has two years of college. When the parties were first married the defendant worked for an oil company and part time in his family's restaurant business. He then worked full time in the family business from 1977 to 1987. Early in the marriage he also started his own garage door sales and installation business. In 1989 the defendant started work at the Madison Board of Education as a custodian. This provided CT Page 16720 health benefits for the family. He is still employed at the Madison Board of Education where his current salary is $31,000.00. He is also still self employed in the garage door and installation business. His reported gross earnings from the business in 1998 was $32,87.00. He submitted information for a number of years of earnings demonstrating an earning capacity of at least $450.00 per week from his business.
The plaintiff and the defendant agree that the marriage has broken down irretrievably. The breakdown started approximately ten years ago. The defendant is primarily responsible for the breakdown of the marriage. Several factors contributed to this including the defendant's abuse of alcohol, at least two incidents of infidelity and poor hygiene. The parties have not been intimate for over six years.
The parties went to marriage counseling but that was unsuccessful. The defendant made attempts at treatment including eight weeks at Yale Psychiatric Institute. However, he continued drinking while participating in that treatment program. During the pendency of this action the defendant had filed for conciliation. There were two sessions ordered by the court. The plaintiff attended both, the defendant attended one.
The defendant also went to Thomas Campbell, a licensed clinical social worker specializing in chemical dependency and marital work. Unfortunately, the defendant only went to four sessions and all of the information Mr. Campbell provided at trial was the information told to him by the defendant. It was also Mr. Campbell's opinion that the defendant needed to be in treatment for over a year.
During 1998 there were several incidents leading up to the filing of this action. On July 13, 1998 both parties were arrested in a domestic dispute and at one point restraining orders had been issued against them both. On July 14, 1998 the defendant entered the wife's bedroom and removed some of her personal belongings including bills and clothing. This was witnessed by the oldest child David. The defendant's explanation of this incident is not credible.
The defendant was served in this action on September 25, 1998. The defendant arranged to have service made at the marital residence. He also arranged to have the children present and have one of them take a picture while he was served. During the CT Page 16721 pendency of this action both the plaintiff and the defendant exhibited a high level of hostility towards each other. They swore at each other, sometimes while the children were present. Both parties filed numerous motions and were unable to resolve simple issues that would benefit the whole family. Before filing for dissolution, at one point there were restraining orders against both parties.
The defendant's conduct was far more egregious. He engaged in a pattern of harassment against the plaintiff. The defendant brought rifles into the house on December 26, 1998 after the restraining order had been issued against him. On April 15, 1999 the defendant was on the premises, intoxicated, and intended to enter the residence in violation of a court order. The defendant also started repairs to the bathroom in violation of a court order requiring an agreement to do the repairs. He was given permission to continue the work but he started it when he shouldn't have and performed the work at odd times including very late hours in the evening. The defendant cut the phone lines in the house and had also placed recording devices throughout the house and the plaintiff placed a recorder one time. The defendant also called the house numerous times during the course of one day. The defendant also withdrew over $7,000.00 in cash from joint bank accounts between September 1998 and May 1999.
There is a promissory note dated November 10, 1986 [defendant's exhibit #8]. This item is listed as a liability on the defendant's financial affidavits. This note was recorded on October 1, 1998 after the defendant was served on September 25, 1998. There was a hearing on a motion for prejudgment remedy and the court [DeMayo, J.] found that the defendant and his mother were acting in concert to encumber the property, which is the marital residence. [Plaintiff's exhibit #CC.] This court makes no ruling on the validity of that note and leave the parties to their civil remedies.
The court has considered all the evidence and the provisions of C.G.S. § 46b-82 concerning alimony; C.G.S. § 46b-84
concerning maintenance of minor child; C.G.S. § 46b-56
concerning custody; C.G.S. § 46b-81 concerning property division and C.G.S. § 46b-62 concerning attorney's fees. The court orders as follows:
 ORDERS
CT Page 16722
A. BY WAY OF DISSOLUTION
 1. The marriage of the parties is dissolved and each party is declared to be single and unmarried.
 2. The plaintiff's maiden name is restored to Patricia J. Williams.
B. BY WAY OF ALIMONY
 1. The defendant is ordered to pay to the plaintiff duiplicate periodic alimony in the amount of $100.00 per week.
 2. The alimony payments will terminate upon the earliest of the following:
 a) the death of either party; b) the remarriage of the plaintiff; c) December 31st 2009. The plaintiff had been out of the job market for a substantial period of time. By December 31, 2000 the plaintiff would have established herself in her career, be self-sufficient and earned a pension benefit.
 3. The alimony is non-modifiable as to term but is modifiable in accordance with C.G.S. § 46b-86(a) and (b).
 4. Payments are to be made in advance and by immediate wage withholding until the wage withholding is in effect, the defendant shall pay in advance by money order or bank check.
C. BY WAY OF CUSTODY AND VISITATION:
 1. There shall be joint legal custody of the minor children with primary residence with the plaintiff.
 2. The defendant is awarded reasonable visitation as follows: Every other weekend from Friday after school until Sunday 7:00 P.M. and Wednesday midweek after school until 7:00 P.M.
 3. In the year 2000 and each even numbered year thereafter the plaintiff shall have Easter, July 4th, Thanksgiving and Christmas Eve. The defendant shall have the odd numbered years. CT Page 16723
 4. In the year 2000 and each even numbered year thereafter the defendant shall have Memorial Day, Labor Day and Christmas Day.
 5. When a scheduled holiday visit immediately follows a regularly scheduled visit, then the visit shall be extended overnight to include the holiday.
 6. Each parent shall have one month exclusive during the Summer vacation. The month of July to the defendant and the month of August to the plaintiff.
 7. Each parent must notify the other of any out-of-state trips as soon as the plans are finalized.
 8. Each parent shall have telephone access to the children while the children are with the other parent between 9:00 A.M. and 8:00 P.M., but no more than one call per day. The children may call when necessary but not at the request or urging of the parent.
 9. The plaintiff shall notify the defendant of all medical appointments. Each parent shall notify the other of any illness, injury or emergencies as soon as possible.
 10. Neither party shall relocate more than thirty miles without first giving ninety days notice in writing to the other party.
D. BY WAY OF CHILD SUPPORT
 1. The defendant is ordered to pay $214.00 per week in accordance with the child support guidelines.
 2. Payments are to be made in advance by immediate wage withholding. Until the wage withholding is in effect, the defendant shall pay, in advance, by money order or bank check.
E. BY WAY OF PROPERTY ORDERS
 1. The plaintiff shall have exclusive possession of the residence located at 58 Barlett Drive, Madison, until the earliest of the following: a) the youngest child Christopher's eighteenth birthday or age nineteen if still CT Page 16724 in high school; (b) cohabitation pursuant to C.G.S. § 46b-86(b) or remarriage of the plaintiff.
 2. When the earliest of the above occurs and the house is sold, the net proceeds after all expenses connected to the sale of the house, and balance of second mortgage, if any, will be divided as follows: the first $21,000.00 to the plaintiff. This represents the pension offset from the defendants pension and a portion of the funds the defendant removed from the joint accounts between September 1998 and May 1999. The remaining proceeds will be divided equally between the parties.
 3. The plaintiff will pay the first and second mortgage. The home equity line of credit shall not be increased.
4. The 1995 Ford Windstar is awarded to the plaintiff.
5. The 1998 chevy Van is awarded to the defendant.
6. The boat is awarded to the defendant.
7. The jewelry is awarded to the plaintiff.
8. The plaintiff is awarded her TIAA/CREF annuity.
9. The defendant is awarded his pension.
 10. The plaintiff is awarded all personal property in her possession.
 11. The defendant is awarded all personal property in his possession.
 12. The personal property of the plaintiff which was removed from the marital residence by the defendant is ordered returned including any jewelry and personal papers.
 13. Each party shall retain the funds in checking and/or savings accounts listed on their financial affidavits of 7/20/99 and 7/26/99.
 14. Twenty percent of the net proceeds (if any) from the defendant's worker's compensation claim is awarded to the defendant. CT Page 16725
F. INSURANCE
 1. The defendant shall maintain an unencumbered life insurance policy of not less than $125,000.00 for the benefit of the minor children at a cost not to exceed $1,000.00 per year for as long as he has a child support obligation. The plaintiff shall be named trustee. The defendant shall notify the plaintiff or provide authorization to notify the plaintiff, that the premium is paid.
 2. The plaintiff mother shall provide medical and dental coverage for the benefit of the minor children as available through her employer. In the event this is not available the defendant shall then provide medical and dental coverage as available through his employer.
 3. Any unreimbursed and/or uninsured medical and dental expenses shall be shared as follows: 66% to the plaintiff and 34% to the defendant.
G. LIABILITIES
 1. Each party shall be solely responsible for all liabilities listed on their financial affidavits. The plaintiff's dated July 20, 1999 and the defendant's dated July 26, 1999.
 2. The court makes no ruling as to either the validity of the note or the debt claimed as owed to Grace Yelmini. She was not named as a party to these proceedings. The parties are therefore left to their civil remedies.
H. DEDUCTIONS AND EXEMPTIONS
 1. The plaintiff shall have the mortgage interest as a deduction and the youngest child Christopher as an exemption on her federal and state tax returns.
 2. The defendant shall have the other two children, Thomas and David, as exemptions on his federal and state tax returns.
I. ATTORNEY'S FEES
1. Each party shall pay their own attorney's fees. CT Page 16726
J. MISCELLANEOUS
 1. The parties are to exchange copies of their federal and state tax returns by certified mail and return receipt within fifteen days after such returns have been filed for as long as there is an outstanding alimony and/or child support order or any outstanding arrearage from such orders.
 2. Counsel shall prepare the judgment file within thirty days and send to counsel for the defendant for signature and filing.
Crawford, J.